Good morning. My name is John Bartlett. I represent Appellants Gallagher and Franklin. This is an appeal of an order dismissing a complaint in the Federal District Court in Reno, Nevada. We are here to argue that the District Court judge erred as a matter of law in dismissing this case on the grounds of giving race judicata effect to a Delaware Chancery Court judgment. The reason that we believe an error was committed is that the elements of race judicata were not met to establish the defense of race judicata in this case, primarily on the identity of claims aspect of the analysis. The claim that was alleged in the Federal District Court complaint at issue in this case involved an alleged contract that was entered into between the parties, appellants and appellees, which was for Mr. Gallagher and Ms. Franklin to purchase the entire interest of Mr. Long in the entity LGF Enterprises, LLC. Now, this contract would have had the collateral effect of resolving the Delaware court action, which was pending at the time. A final judgment was not entered in the Delaware court action until the Court of Appeals in the Supreme Court. There was a final, final judgment in Delaware. Correct. Whatever was true earlier. Right? Correct. And that's the relevant time frame, now. As of now, why isn't it race judicata? Well, the Delaware court judgment is certainly race judicata as any issues that were litigated or could have been litigated in that action. What we're asserting is that the nucleus of facts involved in the Federal District Court action in Nevada are different and separate from those issues that were litigated in the Delaware court action. And what is your best reason for saying that? Well, the reason for saying that is this was a separate contract that was where there was an offer and an acceptance, and the parties had agreed that my clients were going to pay Mr. Long $1,625,000 for his interest in this entity. And that was basically to settle the Delaware. Yes. Well. What was at stake in the Delaware action as you see it? At stake in the Delaware action, the issues in the Delaware action were, number one, whether LGF Enterprises had been validly formed and was existing. Number two, what assets were owned by LGF Enterprises. And then subsequently, there was a request to dissolve that entity and sell those assets. That's what was at issue. And the assets, what this involved, that was the Elvis Presley memorabilia. Correct. And what does the settlement have to do with? Well, the settlement, the agreement that was reached has had nothing to do specifically with those issues. Basically, it was. It didn't have anything to do with the memorabilia? It did have to do with the memorabilia, but it was an agreement for Mr. Gallagher and Ms. Franklin to purchase Mr. Long's interest. Now, if it had been a third party coming in, obviously that wouldn't have been. And it didn't have provisions in it with regard to the lawsuit? I'm sorry? It had no provisions in it with regard to the lawsuit? No provisions in what? The settlement agreement? The settlement agreement. Actually, I think the only provision that might have been applicable to the lawsuit would be the mutual releases. Exactly.  Right.  That's correct. However, the Nevada lawsuit was filed when it became apparent that Mr. Long was trying to back out of the offer and acceptance that had been made in writing. And so we believe that that's a separate transaction that obviously didn't exist or couldn't have been litigated at the beginning of the Delaware action. And if the issue is, you know, is that simply a settlement agreement that the Delaware court had exclusive jurisdiction? It could have been litigated during the Delaware action, no? Well, it couldn't have been. In fact, it was. I mean, wasn't there a discussion within the Delaware action of whether or not this was a binding agreement? That issue was never directly presented to the Delaware judge. What happened was the Delaware judge became aware of it through a letter that was submitted by my client to the Delaware judge. Now, at the time, he believed that the case had the contract had been agreed to, had been entered into, and that the case, that that was simply a matter of finishing the ministerial aspects of the contract, not the essential terms, but just the ministerial aspects of it. So my client was not aware or didn't believe, now he was acting pro se at the time, but he did not believe, he thought that the Delaware case was essentially over because he had this agreement. And it was not until shortly before the Delaware Chancery Court judge entered the final judgment in the Delaware case that my client realized that, at least at that point in time, that they hadn't finalized those terms. But it would have been inconsistent with the final judgment for this to – in other words, if this was a binding agreement, the final judgment shouldn't have been entered. Well, if this agreement had been consummated prior to the Delaware judge entering his judgment, then, yes, there would have been no need for the Delaware judge to enter his judgment. On the other hand, I don't believe, if we are permitted to go back and prove our cause, that there was a valid binding contract for $1,625,000. It doesn't necessarily set aside what happened in the Delaware case. The Delaware judgment is the Delaware judgment. All that would really happen is that my clients would be substituted in, essentially, for the interests of Mr. Long as regards to an enforcement of that judgment. Now, that might change who has to pay who how much money to carry that out, but it does not necessarily void or make the Delaware judgment invalid. You know, that is definitely a valid and binding judgment, no doubt about it. And we're not trying to argue that that judgment should be set aside. What we're arguing is — What was the judgment? What did the judge order? The judge ordered — well, first of all, the judge found that LGF Enterprises was a valid and existing Delaware LLC, that it owned the Elvis Presley Collection and some rolling stock, and that Mr. Long was appointed as a trustee, a liquidating trustee to liquidate the assets. So it also dissolved the LLC as well. And what about your clients? My client — well, the Delaware judge also ordered that my client — that from the proceeds from liquidating the assets, they were to be divided 50-50 between Long and my clients after Mr. Long was reimbursed $1,200,000 as his contribution to the LLC. And then there were some costs and attorney's fees awarded. And the settlement — purported settlement or agreement would have a different distribution, different results in terms of where the money went. Well, the agreement would be that my client would pay Mr. Long $1,625,000 for his interest. And so to the extent — I mean, the assets of the LLC have still not been completely liquidated. Some of them have been liquidated. I don't believe any of the money has been distributed to anybody. And so the account would be settled with regard to what has happened thus far. So I don't think it would be inconsistent necessarily with the Delaware judgment. I mean, we could — you could still enforce that. It's just that the transfers of money between the parties might be a little different. Right. Exactly. So, again, that's our position. I'll save the rest of my time for rebuttal. Thank you. Good morning, Your Honors. Kurt Franke on behalf of the appellees in this matter. My clients — or we ask — the appellees ask this Court to affirm the district court's dismissal of the federal court complaint based on 28 U.S.C. 1738, the Full Faith and Credit Act. Under that act, Judge Sandoval, the district court judge in this matter, was bound to dismiss the case. The Delaware Chancery Court entered an opinion that — final judgment on the matter with an opinion that the exclusive ownership of the memorabilia in this case was owned by LGF Partnership, LLC. That was affirmed on appeal. The appeal was brought by Mr. Gallagher. And in that appeal, he mentioned violation of due process rights and asked for a full trial on the merits. A part of the merits of that claim were Gallagher's counterclaims in that action, which listed virtually every counterclaim in the current federal court action and the Third Amendment complaint in that action. In addition, the judge was well aware of Mr. Gallagher's contention that the proceeds — the memorabilia had been transferred to him during the course of that action by way of this alleged settlement agreement. The judge ruled at the end of the day that that had not occurred and that the assets were owned by LGF Enterprises, LLC. So is your ultimate contention that it could have been litigated or it was litigated, the validity of the settlement agreement? My contention is it was not brought as a counterclaim, but it was — it was an issue of fact that was incident to the final — the final decree. What was an issue of fact? The issue of whether there had been a settlement agreement. It was raised to the Court. The Court said there had not been. Specifically on its — on its record, it said that. And then it said that LGF Enterprises still owned this property and that that was the final decree of the judge. That would be — Judge Sandoval was — It would be inconsistent with the final judgment for this agreement to be given for us at this point. It would absolutely be inconsistent with the final judgment, in addition to the terms that LGF Enterprises was represented at that time by the manager, Richard Long, who was the — one of the appellants — appellees in this case. It was also — it would be inconsistent in that the memorabilia has been liquidated at this point for the most part, and there's — you can't pull those back. In addition, we believe they waived the argument when they went on appeal before the Delaware Supreme Court. Right. Was that a still pro se? At that point, was that pro se? I believe the appeal was pro se, Your Honor. We also believe that under res judicata, in the transactional test, under Delaware law, as recognized by Ambay City Investing Company, quoting Maldonado v. Lewis, I think a major point of that test, and a test that's also been echoed by this Court in Tahoe Sierra Preservation, is the opportunity to bring those claims in the prior case. In this case, Mr. Gallagher had the opportunity to bring these claims in the prior action, chose not to bring those claims. And the Delaware Supreme Court's already issued an order on that very issue. In the case of S.S.V. Ackerman, it's cited in our brief, 234 Atlantic 2nd, 444. In that case, a plaintiff outside of the record complained of things without bringing any formal pleadings before the Court, but complained of some actions done. The mere fact that he had complained to the Court of those actions that had been done meant that they were barred by res judicata and claim preclusion in later litigation. And the Court stated, while he notified the Chancellor of the existence of this possible claim, he never thereafter pressed it before any court. In that case, the Court said, when you didn't press it before the court, you notified the court of your awareness of it, you had the opportunity to, as the appellants did here, then res judicata serves as a bar to later bring in that claim in another action. Ginsburg. Okay. So the result of the dispute over this memorabilia, which is what this is all about, I guess. That's correct. As at the end of the Delaware action was what? At the end of the Delaware action, it was. Who owns what? LGF Enterprise still owns it. Mr. Freeman is still a 50 percent owner in that. The liquidation, as resolved, ended up in about $200,000. Didn't quite have the value that it was projected to have had. And it was liquidated through a majorly publicized auction. All of those proceeds go to Mr. Long for pursuing that action and to reimburse him for his initial investment, plus his attorney's fees incurred in the Delaware action that obviously resolved the very issues they're claiming were brought up by this agreement to sell an interest in the memorabilia. Was there any reason why the existence, the purported existence of this agreement couldn't have been brought into the Delaware case in a couple months before the final judgment in Delaware? No, Your Honor. There were four months prior to the final judgment in which the plaintiffs could or the appellants could have brought this alleged by a counterclaim or a... By a motion to amend the complaint or the counter, I'm sorry, a motion to amend the counterclaims and bring it in by way of counterclaim. They didn't try that. They didn't try that. But they did try to more forestall. They never showed up for any hearing. He basically appeared by way of letter to the court. But he didn't want to show up at the hearings or present formal pleadings. So now they want a second bite at this nearly devoured litigatory apple and to try to retrieve this claim and bring it out in Federal court. Again, I believe Judge Sandoval was duty bound, was bound by full faith and credit to give heedance to the court's finding. And were he to proceed with his action, it would essentially undo what has already happened under the Delaware judgment? That's exactly right. It would drive a spear right into the heart of the court order in the Delaware action. Any further questions? Thank you. Thank you. Well, briefly, I don't believe it would undo the Delaware action by any means. So I'll remove the spear. Well, the Delaware action says the money goes here, here, and there, and this says the money goes there, there, and there. Right? So the money is being used. Well, true. But there — just because there's a judgment, there could still be a settlement or a different distribution. But the settlement was before it. I mean, that's the problem. I mean, if the settlement agreement — Well, there's nothing there. You couldn't settle it now. That would be one thing. But it was before it, before the judgment in Delaware. That's correct. So there was no reason you couldn't have gone into Delaware, and in some weird form you did, and said, don't go forward. This has been settled. And it's the same facts that are at issue. It's just a question of whether it's going to be dealt with by the settlement or dealt with by the judgment. And you just didn't do it. Well, Judge, again, we're dealing with a pro se defendant. He believed that there was an agreement. He believed that the Delaware action was going to be stopped. And by the time he learned that the Delaware action wasn't going to be stopped because Mr. Long was not going to — Well, I don't necessarily fault them, but I do fault you for bringing this case. Well. Because it doesn't make any sense. Well, that your client feels that he's been had, I guess. He does. Okay. Thank you. There don't appear to be any further questions. Thank you.
judges: Strom, Schroeder, Berzon